UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

ANA MARIA CORDERO,

                              Plaintiff,        **No. 1:15-cv-00845(MAT)**
                                                **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

─────────────────────────────────


### INTRODUCTION

     Represented by counsel, Ana Maria Cordero ("Plaintiff")
instituted this action pursuant to Titles II and XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
the Acting Commissioner of Social Security ("the Commissioner")
denying her applications for Disability Insurance Benefits ("DIB")
and Supplemental Security Income ("SSI"). This Court has
jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g),
1383(c).

### PROCEDURAL STATUS

     On March 6, 2012, and March 12, 2012, Plaintiff protectively
filed applications for SSI and DIB, respectively. Plaintiff, 48
years-old and with past work as an assistant teacher, an elder-
caregiver, and a secretary, alleged disability beginning December
15, 2010, due to back pain, neck pain, migraine headaches, and

carpal tunnel syndrome. After her claims were denied on August 3, 2012, Plaintiff requested a hearing, which was held via videoconference on October 21, 2013, before Administrative Law Judge Curtis Axelson ("the ALJ"). Plaintiff appeared with her attorney and testified. The ALJ did not call any expert witnesses. On January 8, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review on July 27, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference the comprehensive factual summaries provided by the parties in their supporting briefs. The medical evidence will be discussed in more detail below, as necessary to the Court's resolution of the issues presented on this appeal.

For the reasons that follow, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion.

## SCOPE OF REVIEW

When considering a claimant's challenge to the Commissioner's decision denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record.

See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), but "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted)). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I.   Step Two Error

At step two of the sequential evaluation, the ALJ found that Plaintiff had the following "severe" impairments: lumbar disc disease, early degenerative changes of the cervical spine, carpal tunnel syndrome, asthma and depression. (T.35).[1] Plaintiff argues that the ALJ erred at step two in failing to mention, much less evaluate, Plaintiff's migraine headaches as either a severe or non-severe impairment. The Court agrees, as discussed further below.

---

[1] Citations in parentheses to "T.__" refer to pages in the certified transcript of the administrative proceeding.

-3-

The record indicates that when Plaintiff had a consultative physical examination on July 16, 2012, with Nikita Dave, M.D., she described suffering from headaches twice weekly that included burring of her vision, and sensitivity to light and sound. (T.325). "Headaches" was one of the diagnoses Dr. Dave assigned to Plaintiff, and she noted that Plaintiff "[m]ay have moderate limitations for all activity during acute bout of headache, likely to be transient over a few hours." (T.329).

About five months later, on January 9, 2013, Plaintiff underwent a neurologic consultation with Dr. Laszlo Mechtler (T.858-62), to whom she complained of left-sided hip and leg pain, as well as constant muscle pains, neck pain and headaches, which had been worsening over time. At present, Dr. Mechtler noted, Plaintiff was having daily headaches, rated as 8 out of 10 in severity, that lasted a few minutes. About 4 to 5 times a month, Plaintiff suffered more intense headaches, rated as 10 out of 10 in severity; these were accompanied by photophobia, nausea, neck stiffness, and blurred vision. Headache triggers included sleep disturbances, weather changes, menstrual cycles, and depression. Plaintiff reported that she smoked cannabis on a daily basis for pain relief. Dr. Mechtler diagnosed Plaintiff with migraine without aura, with intractable migraine with status migrainosus;[2] and back

---

[2]     Status migrainous refers to a a migraine that lasts for more than 72 hour; status migrainosus may require hospitalization to address dehydration and severe pain. See, e.g., http://www.webmd.com/migraines-headaches/guide/status-migrainosus-symptoms-cau

pain. Plaintiff was prescribed Elavil (amitriptyline), Imitrex (sumatriptan), and a Medrol Dosepak (methylprednisolone), and was given an infusion of Imitrex at the appointment.

As noted above, the ALJ did not include headaches among the "severe impairments" he found at step two. "Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques." 20 C.F.R. §§ 404.1508, 416.908. "Severe" impairments are those that "significantly limit" physical or mental abilities to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); see also Social Security Ruling ("SSR") 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3-4 (S.S.A. 1985). "The phrase 'significantly limits' is not synonymous with 'disability.' Rather, it serves to 'screen out de minimis claims.'" Showers v. Colvin, No. 3:13-CV-1147(GLS), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . . 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97 CV 5759, 1999 WL

ses-treatment (last accessed Nov. 17, 2016).

294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ clearly erred in not finding Plaintiff's migraine headaches to be severe impairments at step two.  As an initial matter, severe headaches were diagnosed by at least two "acceptable medical sources," treating physician Dr. Mechtler and consultative physician Dr. Dave.  <u>See</u> 20 C.F.R. §§ 404.1513(a), 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).").  Dr. Dave, whose opinion the ALJ assigned "great weight," specifically noted that when  Plaintiff was experiencing an acute headache, the resultant symptoms "may cause moderate limitations for *all* activity. . . ." (T.329). In January 2013, she told Dr. Mechtler that she was having acute headaches about 4 to 5 times a month. An impairment that would cause "moderate limitations" on "all activity" for "a few hours" at a time, about 4 to 5 times a month, on an unpredictable basis, cannot reasonably be characterized as no more than a minimal effect on a claimant's ability to perform competitive full-time work in the national economy. <u>See Rosario</u>, 1999 WL 294727, at *7 ("[F]indings of markedly and moderately limited in the ability to carry out the kind of basic work activities that are described in the regulations, 20 C.F.R. § 404.1521(b), indicate that the impairments have 'more than a minimal effect' on plaintiff's ability to work, and thus a threshold finding of 'not severe' is

not warranted."). The ALJ's step two finding that Plaintiff's headaches were "not severe" was not supported by substantial evidence and was erroneous as a matter of law. Furthermore, the error was not cured by virtue of the fact that the ALJ proceeded with the remaining steps of the sequential evaluation, because the ALJ did not account for the limitations caused by Plaintiff's acute headaches in the RFC assessment. See Rosario, 1999 WL 294727, at *7. Therefore, remand is required.

## II. Failure to Give Good Reasons for Rejecting Treating Physician's Opinion

Plaintiff argues that the ALJ, in electing to give treating physician Dr. James Lawrence's opinion only minimal weight, misapplied the treating physician rule.

On November 8, 2013, Dr. Lawrence completed a physical RFC questionnaire (T.953-54), indicating that in an 8-hour day Plaintiff could sit for 3 hours at a time, and could sit for a total of 4 to 5 hours in an 8-hour day. She could stand and walk for 1 hour at a time, and for 3 hours total in an 8-hour day. She could frequently lift up to 25 pounds but could only occasionally bend, squat, crawl, or climb. She had moderate restriction involving unprotected heights, being around moving machinery, exposure to marked changes in humidity and temperature, driving automotive equipment and exposure to dust, fumes and gasses. Dr. Lawrence opined that Plaintiff's pain and side-effects from her medications would only interfere with work tasks requiring

-7-

sustained concentration. Dr. Lawrence stated that Plaintiff experienced exacerbations of pain symptoms that would make it impossible for her to function in a work setting. Her symptoms would cause her to miss work three days per month. She had been limited in this way since July 17, 2012. Dr. Lawrence opined Plaintiff could work only 4 to 6 hours a day before her pain would prevent performance of even simple work tasks.

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal and other citations omitted). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" Blakely v. Commissioner of Social Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). The "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process[.]" Rogers v. Commissioner of Social Sec., 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting

the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record[,]'" Blakely, 581 F.3d at 407 (quotation omitted; emphasis in original).

Although the ALJ gave multiple reasons for discounting Dr. Lawrence's opinion, the Court agrees that none of them qualify as "good reasons." First, the ALJ stated that Dr. Lawrence's opinion was "without substantial support from the other evidence of record, which obviously renders it less persuasive." (T.41). The ALJ did not identify, much less allude to, which evidence of record failed to offer "substantial support" for Dr. Lawrence's opinion. This was error, and it precludes the Court from conducting a meaningful review of whether the ALJ's decision is supported by substantial evidence. See Ely v. Colvin, No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016) ("[T]he ALJ's statement that the rejected opinions were 'not supported by the record as a whole' is too conclusory to constitute a 'good reason' to reject the treating psychiatrist's opinions. . . . Without identifying the alleged inconsistencies in the record, the ALJ has failed to provide any basis for rejecting [the doctor]'s opinions.") (citing, inter alia, Marchetti v. Colvin, No. 13-CV-02581 KAM, 2014 WL 7359158, at *13 (E.D.N.Y. Dec. 24, 2014) ("Under the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on

such conclusory assertions of inconsistency with the medical record.")).

In fact, there is objective evidence in the record that supports Dr. Lawrence's opinion. For instance, on September 7, 2012, Dr. Lawrence reviewed Plaintiff's low back MRI (T.844), which revealed L5-S1 disc space narrowing and dehydration; a broad based central disc herniation; and a separate far left lateral disc herniation encroaching on the left foramen. At L4-5, there was a mild disc bulge with a small left paracentral disc herniation, a far right lateral annular tear, and a small disc herniation which had decreased in size. At L3-4 there was a mild disc bulge.

A subsequent MRI in July of 2013, revealed a straightening/slight reversal of normal cervical lordosis which may have been secondary to muscle spasm; multi-level loss of signal and ventral osteophytes involving mild cervical spine slight anterolisthesis of C2 over C3; and slight retrolisthesis of C5 over C6 suspected on the lateral neutral projections. (T.867). At C2-C3, there was a mild posterior broad based disc bulge/left posterolateral asymmetric disc bulging/protrusion associated with mild bilateral facet joint arthropathy and uncovertebral joint hypertrophy more prominent on the left resulting in mild neural foraminal narrowing on the left. At C3-4, there was a posterior broad based disc herniation with mild indentation of the ventral aspect of the spinal cord, and mild bilateral uncovertebral joint

hypertrophy resulting in mild neural foraminal narrowing bilaterally. At C4-5, there was a mild posterior disc bulge and central focal disc protrusion flattening the ventral aspect of the spinal cord. At C5-6, there was a broad based disc herniation and posterior spurring flattening the ventral aspect of the spinal cord, mild bilateral facet joint arthorpathy, and uncovertebral joint hypertrophy resulting in mild bilateral neural foraminal narrowing. At C6-7, there was a mild posterior disc bulge and mild central focal subligamenious protrusion.  When Plaintiff consulted with Dr. Zair Fishkin on October 24, 2013, he reviewed Plaintiff's MRIs and assessed her with a tentative diagnosis of C3-6 herniated nucleus pulpous, L5-S1 herniated nucleus pulposus, left hip greater trochanteric bursitis and left hip origin of pain. (T.949-50). He opined that she was a "poor candidate" for discectomy to correct the "fairly large left-sided disc herniation at L5-S1" with associated degenerative changes  and loss of disc space height at L5-S1. Instead, she would require a "near-complete facetectomy." (T.950). Dr. Fishkin cautioned that even with this surgery, there was a risk that the disc level would continue to collapse. (Id.).

The ALJ also discounted Dr. Lawrence's opinion because he found Plaintiff's treatment history with him to be "quite brief." (T.41). Under the Commissioner's Regulations, a treating source is afforded greater weight once he has examined the claimant "'a number of times and long enough to have obtained a longitudinal

picture of [the alleged] impairment.'" 20 C.F.R. §§
404.1527(c)(2)(i), 416.927(c)(2)(i). "Importantly, there is no
arbitrary, minimum period of treatment by a physician before this
standard is considered met." Fratello v. Colvin, No. 13-CV-4339
VSB JLC, 2014 WL 4207590, at *11 (S.D.N.Y. Aug. 20, 2014), rep. and
rec. adopted sub nom. Fratello v. Comm'r of Soc. Sec., No.
13-CV-4339 VSB JLC, 2014 WL 5091949 (S.D.N.Y. Oct. 9, 2014) (citing
Schisler v. Bowen, 851 F.2d 43, 45 (2d Cir. 1988) ("SSA
adjudicators [should] focus on the nature of the ongoing
physician-treatment relationship, rather than its length."};
Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992) ("The
*nature*—not the length—of the [physician-patient] relationship is
controlling.") (emphasis in original); Vargas v. Sullivan, 898 F.2d
293, 294 (2d Cir. 1990) (applying treating physician rule where
doctor saw patient for only 3 months)). For some time prior to
March 2012, when she returned to Buffalo, New York, Plaintiff had
been living in Florida and had no access to insurance. Plaintiff
began treatment with Dr. Lawrence, a physiatrist (physical medicine
and rehabilitation physician) practicing at Sports Medicine and
Rehabilitation of WNY, in July of 2012 for her low back pain and
lumbosacral degenerative disc dysfunction. (T.337). She continued
treatment with Dr. Lawrence five more times over the course of
about a year. (T.844, 845, 865, 866, 867). Dr. Lawrence completed
his physical RFC questionnaire on November 8, 2013. It is

-12-

inaccurate to characterize the treating relationship between Dr. Lawrence and Plaintiff, which involved six visits over one year, as "quite brief," especially since Dr. Lawrence is a specialist. On the present record, the Court has no trouble concluding that Dr. Lawrence qualifies as a "treating physician." See, e.g., Mancuso v. Comm'r of Soc. Sec., No. 14-CV-0114 MKB, 2015 WL 1469664, at *22 (E.D.N.Y. Mar. 30, 2015) (physician who saw claimant four times over course of six months had an ongoing treatment relationship sufficient to render him a treating source) (citing, inter alia, Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (finding physician who saw the claimant on three occasions over the course of six months and opined on the claimant's physical restrictions was a treating physician, "having [ ] seen [the claimant] on multiple occasions")).

The ALJ additionally characterized Dr. Lawrence's opinion as speculative, stating that when Dr. Lawrence said Plaintiff was "disabled," it was "possible that the doctor was referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision." (T.41). There are at least two grounds for discarding this statement as a "good reason." First, as the Court and the parties are well aware, the ultimate question as to whether a claimant is disabled is reserved to the Commissioner. Dr. Lawrence, however, did not simply pronounce that Plaintiff is disabled and leave it that. Instead,

his report details the specific functional limitations attributable
to Plaintiff's severe impairments and the resultant symptoms, and
offers his opinion as to how her capacity to perform full-time
gainful employment would be affected. Specifically, the sitting
limitations (four to five hours) Dr. Lawrence assigned would
preclude Plaintiff from performing sedentary work, and the
standing/walking limitations (three hours) would exclude light work
as an option. See SSR 96-9p (sedentary work requires ability to sit
for about six hours in an 8-hour day); SSR 83-10 (light work
requires ability to stand and/or walk for six hours in an 8-hour
day). The ALJ, however, ignored this. Second, there is no ambiguity
as to the scope of Dr. Lawrence's report; he clearly stated that,
in his opinion, Plaintiff was disabled from "full-time competitive
employment five days per week, eight hours per day on a sustained
basis." (T.954).

Finally, the ALJ faulted Dr. Lawrence's opinion as being
internally inconsistent because he "opined that [Plantiff] could
work 4-6 hours if limited to part time work." (T.41). However, this
statement does not contradict Dr. Lawrence's opinion that Plaintiff
is unable to perform "full-time competitive employment five days
per week, eight hours per day on a sustained basis," i.e., she
could not work 40 hours a week on a "regular and continuing basis."
See SSR 96-9p. Courts in this Circuit have found that the ability
to engage in part-time work does not preclude a finding that a

person is disabled. <u>E.g.</u>, <u>Mazzella v. Sec'y of U.S. Dep't of Health</u>
<u>& Human Servs.</u>, 588 F. Supp. 603, 608 (S.D.N.Y. 1984) (collecting
cases, <u>e.g.</u>, <u>Cornett v. Califano</u>, 590 F.2d 91, 94 (4th Cir. 1978)
("the ability to work only a few hours a day or to work only on an
intermittent basis is not the ability to engage in 'substantial
gainful activity'")); <u>see also</u> <u>Koseck v. Sec'y of Health & Human</u>
<u>Servs.</u>, 865 F. Supp. 1000, 1014 (W.D.N.Y. 1994) (certified
rehabilitation specialist found claimant "unable to work
consistently on a sustained basis because of his physical
impairments, and . . . would not be able to work in one position
for more than one and one-half hours"; evidence did not support
ALJ's finding that claimant not disabled).

## III. Remedy

The fourth sentence of Section 405(g) of the Act provides that
a "[c]ourt shall have power to enter, upon the pleadings and
transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner. . ., with or without
remanding the case for a rehearing." 42 U.S.C. § 405(g). Although
it is less typical, reversal without remand is the appropriate
disposition when the record contains "persuasive proof of
disability," <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980),
and further proceedings would be of no use because there is no
reason to conclude that additional evidence might support the
Commissioner's claim that the claimant is not disabled, <u>Butts v.</u>

<u>Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir. 2004).

Here, that standard is met. Beginning at step two, with the omission of Plaintiff's medically determinable migraine headaches as a "severe impairment," the ALJ's sequential evaluation was marred by legal errors and mischaracterizations of the record. Of particular note is the ALJ's failure to properly apply the treating physician rule, and the corollary "good reasons" rule, when weighing the medical source statement of Plaintiff's treating specialist, Dr. Lawrence. None of the regulatory factors support a decision not to afford controlling weight to Dr. Lawrence's opinion, which is consistent with the evidence of record, as discussed further above in this Decision. If Dr. Lawrence's opinion were given controlling weight, Plaintiff would be unable to maintain competitive gainful employment. <u>See</u> <u>Beck v. Colvin</u>, No. 6:13-CV-6014(MAT), 2014 WL 1837611, at *15 (W.D.N.Y. May 8, 2014) ("Substantial evidence exists in the record to warrant giving deference to the opinions of Plaintiff's treating psychiatrist, and when that deference is accorded, a finding of disability is compelled.") (citing <u>Spielberg v. Barnhart</u>, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . .")). In the present case, the record is complete, and further administrative proceedings would serve no purpose. Accordingly, remand for the calculation of benefits is warranted. <u>See</u> <u>Parker</u>, 626 F.2d at 235.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's decision is reversed, and the matter is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**SO ORDERED**

**S/ Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     November 21, 2016
           Rochester, New York